UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| EARL DAVID DOWTY,<br><br>Plaintiff,<br><br>vs.<br><br>MARTY JACKLEY, Attorney General of the State of South Dakota,<br><br>Defendant. | 3:16-CV-03018-RAL<br><br>OPINION AND ORDER DISMISSING § 2254 PETITION |

While his 28 U.S.C. § 2254 habeas petition was pending in Dowty v. Jarvis, 16-CV-3003-RAL, Plaintiff Earl David Dowty filed another § 2254 habeas petition in this case. Because the same reasons apply to dismissal of Dowty's present § 2254 petition, this Court repeats much of the content of the Opinion and Order Granting Motion to Dismiss from 16-CV-3003-RAL.

## I. BACKGROUND FACTS

Earl David Dowty has filed another § 2254 petition challenging his state court convictions as being obtained in violation of his constitutional rights. Doc. 1.[1] Dowty is currently a prisoner in the custody of the Federal Bureau of Prisons. Dowty pleaded guilty to Felon in Possession of a Firearm, United States v. Dowty, 11-CR-30026, Doc. 26, and was

[1] Citations to documents filed in the current case will use "Doc." followed by the document number in the CM/ECF system. Dowty has been involved in many cases before this Court, so citations to documents in the CM/ECF system filed in other cases will specify the case number before the "Doc." cite.

sentenced to ten years in federal custody by this Court on August 16, 2011, Dowty, 11-CR-30026, Doc. 38. The United States Court of Appeals for the Eighth Circuit dismissed Dowty's appeal, Dowty, 11-CR-30026, Doc. 52, because Dowty had knowingly waived appeal rights. Dowty filed a motion to vacate his federal court conviction, which has been denied. Dowty v. United States, 13-CV-3022, Doc. 24. Both this Court and the Eighth Circuit denied Dowty a certificate of appealability. Dowty, 13-CV-3022, Docs. 24, 34.

The firearm to which Dowty admitted possession in his federal felony conviction was one of the firearms stolen in the burglaries for which he was convicted in a South Dakota state court. Dowty, 11-CR-30026, Doc. 24. Dowty's federal sentence is being served concurrently with a forty-five-year sentence imposed upon Dowty by the Circuit Court for the Sixth Judicial Circuit of South Dakota. Dowty v. B.O.P. et al., 13-CV-3032, Doc. 14-1 at 4; Doc. 14-2 at 4; Doc. 14-3 at 4.

The circumstances surrounding Dowty's state court convictions were summarized by the South Dakota Supreme Court in its opinion affirming Dowty's state convictions:

> During a 25-day period in October and November 2010, three homes were burglarized in rural Mellette County. The homes were located within 20 miles of each other. The first burglary occurred on October 30, 2010. Upon returning home at approximately 12:30 a.m. on October 31, 2010, Peter and Marla Ferguson realized their home had been burglarized. Several items were missing from the Ferguson home, including two televisions, two jewelry boxes, three guns, Marla's work bag, and all the meat from their freezer. The Fergusons reported the burglary to the Mellette County Sheriff's Office, which initiated an investigation.
>
> On November 6, 2010, Jeannine Woodward and Rose West left their home around 9:00 a.m. When Woodward and West returned home at approximately 4:00 p.m., they discovered that several items were missing from the freezer and that seven guns had been stolen. Outside, Woodward and West noticed blood trailing from the driveway to the front door. However, there was no blood inside their home. During the investigation of the burglary, the Mellette County Sheriff's Department collected a sample of the blood from the front door for DNA testing. At that time, no suspects were identified for either burglary.

The next burglary occurred on November 24, 2010. At approximately 7:00 p.m., Michael Williams returned home after having dinner with his family at a co-worker's house. Williams's wife and children had a separate vehicle, and planned to return home sometime after Williams. Upon entering his home, Williams immediately saw two men he did not recognize. One of the two men was rifling through the freezer, while the other man was attempting to remove the television from the wall. The man by the freezer turned around and pointed a handgun at Williams. Subsequently, Williams saw the man by the television reach into his coat pocket. Williams then saw a laser beam flash across the wall. Williams closed the front door and started running away from the house. While Williams was running, he saw the laser beam shining near him on the ground and was then shot twice in the leg. Despite his injuries, Williams was able to access the handgun he carried with him and fire one shot in the air. Williams then called 911 on his cell phone. The two men fled the scene while Williams waited for help. Once law enforcement arrived, Williams was transported to the hospital for treatment. He eventually recovered from his injuries. Items stolen from Williams's home included the handgun with the laser sight, a second handgun, jewelry, coins, and a flashlight.

After Williams was transported to the hospital, law enforcement began investigating the burglary and shooting. Agent Jason Jares, a law enforcement officer employed by the South Dakota Division of Criminal Investigations (DCI), led the investigation. One of the items recovered from the scene was a partially smoked cigarette butt that had been found near the deck outside of the home. The cigarette butt was sent to the DCI forensic lab for DNA testing.

As the investigation progressed, Earl Dowty and his stepson, Wayne Richards, became the primary suspects in the burglary and shooting that took place at Williams's home. Specifically, Dowty was suspected of being the individual Williams observed standing at the freezer. Richards was suspected of being the individual Williams observed attempting to remove the television from the wall, who shot Williams as Williams ran away from the house. Both Dowty and Richards lived with Dowty's wife (Richards's mother), Rose Leading Fighter, at her home in Parmelee, South Dakota, which is located within an Indian reservation. Because the home was located on reservation land, Agent Jares sought assistance with the investigation from a Federal Bureau of Investigation (FBI) agent. The FBI agent obtained a federal search warrant for Leading Fighter's home that permitted law enforcement to search for items stolen from Williams's home.

The search warrant was executed on January 8, 2011. During the execution of the search warrant, law enforcement did not locate any of the items that had been stolen from Williams's home. Nevertheless, while searching the home, law enforcement discovered a tan cloth bag with a buffalo skull imprinted on the side. The bag contained various items including documents with the name "Marla Ferguson" on them, a wallet, and a jewelry box. Leading Fighter consented to law enforcement taking possession of the bag and its contents.

Before executing the search warrant, Agent Jares was unaware of the burglaries of the Ferguson and Woodward/West homes. However, Agent Jares

was informed of these two burglaries after recovering the bag containing the documents with Marla Ferguson's name. Upon learning of these unsolved burglaries, law enforcement realized that some of the items they had seen in plain view while executing the search warrant at Leading Fighter's home were consistent with items that had been stolen from the Ferguson home. Ultimately, Leading Fighter consented to law enforcement taking custody of a jewelry box and a television that had been stolen from the Ferguson home.

As investigations of the three burglaries continued, law enforcement obtained additional evidence that connected Dowty and Richards to the burglaries. For example, law enforcement discovered Dowty and Richards had traded and pawned various guns that had been stolen during the burglaries of the Ferguson, Woodward/West, and Williams homes. Specifically, on November 23, 2010, Richards pawned a rifle that had been stolen from the Woodward/West home. Dowty was with Richards at the time, but Dowty remained outside the pawn shop in a vehicle. The next day, Dowty pawned a rifle that had also been stolen from the Woodward/West home. Richards was in the pawn shop with Dowty at the time Dowty pawned the rifle. Furthermore, on two separate occasions during fall 2010, Dowty traded stolen guns to Jason Little Elk in exchange for Little Elk performing repair work on Dowty's vehicle. The first gun Dowty traded Little Elk was a rifle that had been stolen from the Ferguson home. Richards was with Dowty at the time of the trade. In fact, Richards retrieved the rifle and handed it to Little Elk. The second gun Dowty traded Little Elk was the handgun with a laser sight that had been used to shoot Williams.

In addition, samples of both Dowty's and Richards's DNA were sent to the DCI forensic lab to be compared with the blood sample collected at the Woodward/West home and the cigarette butt collected at the Williams home. DNA testing established that the blood sample collected from the front door of the Woodward/West home was a match to Dowty. DNA testing of the cigarette butt collected at the Williams home revealed the presence of DNA profiles from two individuals. The testing established that Richards was the major contributor and Dowty was the minor contributor to the DNA found on the cigarette butt.

By joint information, Dowty and Richards were charged with 13 felonies as a result of the three burglaries. Additionally, Dowty was accused of being a habitual offender. Dowty was arraigned on September 22, 2011, and he pleaded not guilty to the charges. Meanwhile, Richards entered into a plea agreement with the State in which he pleaded guilty to two of the charges stemming from the burglary and shooting that took place at the Williams home.

On January 30, 2012, Dowty filed a motion to sever charges and for relief from prejudicial joinder. Dowty sought four separate trials: one trial for each of the three burglaries and an additional trial for the charges related to the shooting of Williams. The trial court issued a memorandum decision denying Dowty's motion on May 2, 2012. The case proceeded to jury trial on September 24, 2012. Richards did not testify at trial.

At the close of the State's case, Dowty moved for judgment of acquittal on all charges related to the burglaries of the Ferguson and Woodward/West homes. Dowty argued that although he was charged with aiding and abetting, the State

> failed to present evidence that Dowty acted with another individual in committing the burglaries at the Ferguson and Woodward/West homes. Thus, Dowty asserted he could not be convicted of aiding and abetting. The trial court denied his motion. Ultimately, Dowty was convicted on 9 of the 13 felony counts, and he subsequently admitted to being a habitual offender. The trial court sentenced Dowty to a total of 45 years in the South Dakota State Penitentiary.

State v. Dowty, 838 N.W.2d 820, 822–25 (S.D. 2013) (footnotes and internal numbering omitted).

Dowty argued on appeal to the Supreme Court of South Dakota that the trial court erred in denying his motion for judgment of acquittal on all charges related to the Ferguson and Woodward/West burglaries and erred in denying his motion to sever the charges. Id. at 825. The Supreme Court of South Dakota affirmed Dowty's state court convictions on October 9, 2013. Id. His one-year Antiterrorism and Effective Death Penalty Act (AEDPA) statute of limitations thus began running on or about January 7, 2014, when his time to file a petition for writ of certiorari ran. His one-year AEDPA limitation extended to on or about January 7, 2015. Dowty sent a letter to a South Dakota state court in which he requested appointment of an attorney "for writ of habeas corpus under rule 6, and 18 U.S.C. 3006A," Dowty, 13-CV-3032, Doc. 14-8, but he did not file any post-conviction petition in state court until December 7, 2015.

Dowty originally filed a federal court petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, on November 18, 2013, requesting this Court to vacate the state court conviction and grant a new trial. Dowty, 13-CV-3032, Doc. 1. This Court screened Dowty's petition and dismissed the first two of the four grounds for relief as plainly having no merit. Dowty, 13-CV-3032, Doc. 10 at 2. The Attorney General for the State of South Dakota responded to the remaining two grounds in Dowty's petition by filing a motion to dismiss, arguing Dowty failed to exhaust state court procedures. Dowty, 13-CV-3032, Doc. 12. Dowty filed several supplemental documents putting forth various arguments, but it was plain that Dowty had not

exhausted state remedies as required at that time. Dowty, 13-CV-3032, Docs. 15, 17, 18, 20, 22, 23, 24, 25. On January 21, 2015, this Court issued an Opinion and Order dismissing Dowty's initial § 2254 case without prejudice and with no certificate of appealability. Dowty, 13-CV-3032, Doc. 26. The Eighth Circuit likewise refused to issue a certificate of appealability. Dowty, 13-CV-3032, Doc. 36.

Dowty, on January 14, 2016, filed a Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 in 16-CV-3003, asserting claims of insufficiency of the evidence, ineffective assistance of counsel, prosecutorial misconduct by prosecuting Dowty because Dowty is a Native American, bias of the state judge, and other protestations that his Due Process and Equal Protection rights were violated. Dowty, 16-CV-3003. Doc. 1. The Defendants in that case filed a Motion to Dismiss and supporting brief because Dowty's § 2254 case was time barred under 28 U.S.C. § 2244(d)(1). Dowty, 16-CV-3003, Docs. 9, 10. Dowty responded, Dowty, 16-CV-3003, Doc. 11, and later filed his own motion, Dowty, 16-CV-3003, Doc. 13, but neither filing provided any explanation of how or why Dowty's § 2254 motion was timely under § 2244(d)(1). This Court entered an Opinion and Order Granting Motion to Dismiss on May 31, 2016, of that case. Dowty, 16-CV-3003, Doc. 14.

Dowty, on May 13, 2016, filed the present § 2254 petition with claims of prosecutorial misconduct and other contentions including Dowty's familiar assertion that his status as an American Indian and treaty rights insulate him from certain criminal prosecution. Doc. 1. Dowty also filed a motion to proceed in forma pauperis. Doc. 2. This Court screens the § 2254 petition under Rule 4 of the Rules Governing Section 2254 Cases and "must dismiss" the case "[i]f it plainly appears . . . that the petitioner is not entitled to relief in the district court . . . ." That rule applies to Dowty's present petition because it is time barred.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act, codified in 28 U.S.C. § 2244(d), provides the statute of limitations application to Dowty's § 2254 case. That statute of limitations applicable to Dowty's § 2254 case provides in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

A judgment of conviction is final, for purposes of commencing running of the § 2244(d) statute of limitations, at the conclusion of all direct appeals in the state system, followed by completion or denial of certiorari to the Supreme Court of the United States. If the defendant does not seek certiorari, then the § 2244(d) period begins to run at the conclusion of all direct criminal appeals within the state system and upon the expiration of the time for filing a petition for certiorari. Smith v. Bowersox, 159 F.3d 345, 348 (8th Cir. 1998). The time for filing a petition for certiorari is ninety days. Jihad v. Hvass, 267 F.3d 803, 804 (8th Cir. 2001). Under § 2244(d)(1)(A), Dowty's statute of limitations began to run ninety days after the Supreme Court of South Dakota affirmed Dowty's conviction on October 9, 2013. Ninety days thereafter is January 7, 2014. See id.

Dowty is entitled to tolling of the statute of limitations for any time during which he had pending a properly filed petition for state post-conviction relief. State post-conviction relief

includes all forms of collateral review that are available after a conviction, but does not include any time during which federal post-conviction relief petitions are pending. Duncan v. Walker, 533 U.S. 167, 172–77 (2001). Thus, Dowty's filing of an early § 2254 petition in this federal Court did not toll his statute of limitations.

Dowty filed federal habeas petitions, but did not file anything with the state courts until his letter on December 7, 2015. Petitioner simultaneously sent correspondence to the Circuit Court for the Sixth Judicial Circuit, Mellette County, South Dakota. These papers did not constitute a habeas corpus action under South Dakota law, but purported to be a "notice of appeal under Rule 60(b)(1) and (2) motion for new trial under SDCL § 15-6-59 pursuant to Williams conviction." The Circuit Court for the Sixth Judicial Circuit, the Honorable John L. Brown, entered an Order on December 17, 2015, dismissing Petitioner's various papers as frivolous. Assuming that Petitioner had, at most, thirty days in which to appeal, his time to do so would have run on January 16, 2016, if not earlier. At the most, Petitioner was entitled to exclude time from December 7, 2015, to January 16, 2016, a period of forty-one days. The possible exclusion of time due to filings before the South Dakota Supreme Court is included within this same time period. The remaining time period—running from January 8, 2014 to December 7, 2015—is far in excess of the one year statute of limitation. Petitioner filed the present petition before this Court on January 11, 2016. Thus, the entire period from January 8, 2014 through December 7, 2015, counts against Petitioner, as he had nothing filed before the South Dakota courts during that time.

A prisoner's pro se status and ignorance of the law are insufficient to excuse a filing outside of the § 2244(d)(1) limitation period. Baker v. Norris, 321 F.3d 769, 771–72 (8th Cir. 2003); Kreutzer v. Bowersox, 231 F.3d 460, 463 (8th Cir. 2000). A petitioner is expected to

diligently pursue, monitor, and investigate his own post-conviction cases. Maghee v. Ault, 410 F.3d 473, 476–77 (8th Cir. 2005). Other circumstances that are insufficient are set out in Jihad, 267 F.3d at 806–807. These include an unsuccessful search for post-conviction counsel and a lack of access to the petitioner's trial transcript. The Jihad court characterized these as the ordinary kinds of obstacles faced by most habeas petitioners, not extraordinary circumstances. Jihad, 267 F.3d at 806–07. Dowty has made no argument to support any equitable tolling.

The United States Supreme Court held in McQuiggin v. Perkins, 133 S. Ct. 1924, 1932 (2013), that a credible showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent might, in extraordinary circumstances, overcome the statute of limitations. Dowty has made no such showing.

## III. CONCLUSION

For the reasons contained herein, it is hereby

ORDERED that the Dowty's § 2254 petition, Doc. 1, is dismissed, and that his motion to proceed in forma pauperis, Doc. 2, is granted to the extent that Dowty qualifies for such status if he desires to appeal. It is further

ORDERED that no certificate of appealability issues because there is an absence of a substantial showing of the denial of a constitutional right to justify issuance of such a certificate under 28 U.S.C. § 2253. However, Dowty may request a circuit judge to issue a certificate under Rule 22 of the Federal Rules of Appellate Procedure.

DATED this 8th day of June, 2016.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE